UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DISABLED PATRIOTS OF AMERICA, INC. and
MARCUS INGRAM,

                Plaintiffs,

v.                                              **DECISION AND ORDER**

NIAGARA GROUP HOTELS, LLC,                07-CV-284S(Sc)

                Defendant .

## I. INTRODUCTION

The matter now before this Court involves the issue of attorney fees. Plaintiffs commenced this action on April 27, 2007, alleging that Defendant Niagara Group Hotels failed to maintain an accessible facility in violation of the Americans with Disabilities Act, §§ 12181 *et seq.* (ADA). On June 4, 2009, the Court granted Plaintiffs' unopposed motion for summary judgment. (Docket No. 66.)

After entry of judgment in their favor, Plaintiffs moved for attorneys' fees, expert fees, litigation expenses, and costs in the amount of $46,196.82 under 42 U.S.C. §12205. (Docket No. 68.) Defendant was afforded the opportunity to object to the application (Docket No. 69), but did not. Plaintiffs then moved to have their fee application deemed admitted and granted in full. (Docket No. 70.)

1

## II. DISCUSSION

A. **Plaintiffs are Eligible to Receive Fees**

Title 42 of the United States Code, Section 12205, allows for the payment of attorney fees as follows:

> In any action or administrative proceeding commenced pursuant to this Act, the court or agency, *in its discretion*, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

(emphasis supplied.)

In order to be considered a "prevailing party" under the ADA, the applicant must have achieved some material alteration of the legal relationship of the parties, and that change must be judicially sanctioned. Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res., 532 U.S. 598, 604-05, 121 S. Ct. 1835, 149 L. Ed.2d 855 (2001) (prevailing party under ADA and Fair Housing Amendments Act); *see also*, Garcia v. Yonkers Sch. Dist., 561 F.3d 97, 102 (2d Cir. 2009) (a prevailing party is one who has favorably effected a material alteration of the legal relationship of the parties by court order). There can be no dispute that an applicant who receives a favorable judgment on the merits satisfies both prongs of the prevailing party test. Buckhannon, 532 U.S. at 604; Perez v. Westchester County Dep't of Corr., 587 F.3d 143, 150-51 (2d. Cir. 2009).

In this case, Defendant was found liable for maintaining its property in violation of the ADA, and is barred from reopening its premises unless it presents a detailed plan, satisfactory to the Court, as to corrective measures to be undertaken. Accordingly, Plaintiffs are prevailing parties eligible to receive reasonable attorney's fees as set forth in

the statute, and the Court now will determine the reasonable fees and costs to be awarded.

**B.     Plaintiffs' Motion that their Fee Request be Deemed Admitted is Denied**

In their motion to deem their fee request admitted, Plaintiffs contend that, absent objections from Defendant, their request should be granted in its entirety. They rely on United States v. Eleven Vehicles, a Third Circuit case involving a fee application under the Equal Access to Justice Act, to urge that courts "may not reduce fees *sua sponte* as excessive, redundant or otherwise unnecessary." 200 F.3d 203, 211 (3d Cir. 2000).

Eleven Vehicles, in turn, relied on Cunningham v. City of McKeesport, 753 F.2d 262, 267 (3d Cir. 1985) (fee application under 42 U.S.C. § 1988), *vacated and remanded on other grounds*, 478 U.S. 1015, 106 S. Ct. 3324, 92 L. Ed. 2d 731 (1986). In this latter case, the Third Circuit was clearly troubled by the district court's failure to explain its significant reduction in total hours and hourly rates, and its application of a 50 percent downward reduction to the already-reduced fee, noting that if the court believes a fee reduction is indicated, it must analyze the circumstances requiring the reduction and its relation to the fee, and make findings that are supportable on the fee application record. *Id.* 269. Despite the absence of such analysis, the Third Circuit sustained the district court's reduction of the unopposed fee request to the extent it was based on time spent in proceedings of which the court presumably had knowledge. *Id.* at 267.

Thus, I read Eleven Vehicles and Cunningham together as standing for the proposition that a court may not reduce a fee request *sua sponte* absent a foundation in the record or an experiential basis to do so.

Even were the Court inclined to accept Plaintiffs' interpretation of Eleven Vehicles

as requiring a "rubber stamp" on its application, this approach is rejected for other reasons. Eleven Vehicles—which clearly states its holding "is well settled in *this circuit*," 200 F.3d at 211 (emphasis supplied)—has never been followed, or even cited, in the Second Circuit. The Third Circuit appears to stand alone here. Plaintiffs have not identified supporting authority outside that circuit, nor has this Court located any. Finally, I reject this approach because it would require the Court to abdicate the application of discretion clearly called for in 42 U.S.C. § 12205.[1] Disabled Patriots of America, Inc. v. Odco Investments, Ltd., 04-CV-7399, 2009 U.S. Dist. LEXIS 53532 (N.D. Oh. June 23, 2009) (declining to endorse fee application under ADA absent court review).

Accordingly, Plaintiffs' motion requesting an award of fees and costs without court review (Docket No. 70), is denied.

## C. Amount of Award for Fees and Costs

Having concluded that Plaintiffs are eligible for an award of attorneys fees in this case, the Court will now determine the amount of the award.

### 1. Legal Standard

Recently, in Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,[2] the Second Circuit "undertook to simplify the complexities surrounding attorney's fees awards that had accumulated over time" in the circuit and district courts. Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). In particular, the Circuit

---

[1] The approach advocated by Plaintiffs would require the Court to accept such tactics as double-billing, absent objection from opposing counsel. As set forth below, there is no precedent in this Circuit for such a result.

[2] 493 F.3d 110 (2d Cir. 2007), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008)

4

Court sought to reconcile the "lodestar" method[3] of determining fees (the product of the attorney's usual hourly rate and the number of hours worked, subject to adjustment based on case-specific considerations to arrive at a "reasonable fee"), with the method developed in Johnson v. Georgia Highway Express, Inc. (which considered twelve specific factors to arrive at the "reasonable fee"). Arbor Hill, 493 F.3d at 114. "Relying on the substance of both approaches, [the Second Circuit] set forth a standard that [it] termed the 'presumptively reasonable fee.'" Simmons, 575 F.3d at 174.

District courts now are directed to set a reasonable hourly rate, bearing in mind all the case-specific variables the Second Circuit and other courts have identified as relevant to the reasonableness of attorney's fees, and then use the reasonable hourly rate to calculate a "presumptively reasonable fee." Arbor Hill, 493 F.3d at 117.

"[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (citations and quotations omitted). After Arbor Hill, the presumptively reasonable fee is "what a reasonable, paying client would be willing to pay," given that a client "wishes to spend the minimum necessary to litigate the case effectively." 493 F.3d at 112, 118. To arrive at that fee, district courts must also consider the twelve Johnson factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the

---

[3] The lodestar method was developed by the Third Circuit. Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973), and is the method this Court previously employed.

attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  Johnson, 488 F.2d at 717-19.  Finally, a district court must consider that a client may be able to negotiate with his or her attorneys, based on their desire for the reputational benefits that could accrue from association with the case.  Arbor Hill, 493 F.3d 119.

### 2. The Forum Rule

Here, Plaintiffs have submitted a "Verified Application for Attorneys' Fees, Expert Fees, Litigation Expenses and Costs," which requests payment for the work of two attorneys from North Miami, Florida at rates of $425 and $350 per hour respectively, and one attorney from this District at a rate of $150 per hour.  The presence of out-of-district attorneys in this case requires that, in addition to the above factors, I also consider the "forum rule."  According to the forum rule, courts "should generally use 'the hourly rates employed in the district in which the reviewing court sits' in calculating the presumptively reasonable fee."  Id. at 119 (quoting In re "Agent Orange" Prod. Liability Litig., 818 F.2d 226, 232 (2d Cir. 1987)); see also, Blum v. Stenson, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984).

Last year, the Second Circuit defined the parameters of the forum rule and its exception in Simmons, on review of the Eastern District of New York's decision to award

6

fees based on out-of-district rates higher than those in that district. 575 F.3d 170. The Circuit Court vacated the fee award, finding the circumstances of the case did not warrant deviation from the forum rule. The Court provided the following roadmap for district courts:

> [W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule. In order to overcome the presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result. In determining whether a litigant has established such a likelihood, the district court must consider experience-based objective factors. Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise. A litigant cannot overcome the presumption through mere proximity of the districts, nor can a litigant overcome the presumption by relying on the prestige or "brand name" of her selected counsel. Lawyers can achieve prestige and fame in numerous ways that do not necessarily translate into better results. The party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result. Unless these limitations are observed, the award of attorney's fees would not respect what we described in Arbor Hill as the touchstone of the doctrine, that district courts should award fees *just high enough* to attract competent counsel. Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise.

*Id.* 575 F.3d at 175-76 (internal citations and quotation marks omitted) (emphasis in original).

### 3. The Reasonable Hourly Rates

According to Plaintiffs' Verified Application, local counsel, Jonathan F. Staehr, has been practicing law since 2002. As discussed fully below, the requested rate of $150 for an attorney with eight years' experience practicing in this District is reasonable.

7

Plaintiffs seek $ 425 per hour for Lawrence Fuller, Esq., and $350 per hour for Thomas Bacon, Esq., both with the law firm of Fuller, Fuller & Associates, P.A., located in North Miami, Florida. Attorney Fuller, who signed the Application, was admitted to practice in 1974 and is a member of the Florida, New York, Ohio, and Washington, D.C. bars. (Docket No. 68-4 at 1.) Fuller is a trial attorney whose practice, since March 2001 or thereafter, has included ADA litigation. (*Id.* at 1-2.) Attorney Bacon has been a practicing attorney since 1989, and is admitted to the Florida, Pennsylvania, and Georgia bars. (*Id.* at 4.) His practice has included representation of plaintiffs under Title III of the ADA since in or about February 2006. (*Id.* at 5.)

As set forth above, there is a presumption in favor of applying in-district rates to these attorneys, unless Plaintiffs persuasively overcome the presumption. The Application states that Plaintiff Ingram, a resident of Georgia, and Disabled Patriots of America, Inc., a non-profit located in Lake Worth, Florida, "were familiar with the out-of-state attorneys," who have experience in ADA cases. (Docket No. 68-2 at 4.) No reason—other than familiarity with their attorneys' "brand name"—is given for their retention, and Plaintiffs have made no attempt to establish that their selection, over counsel charging in-district rates, would likely (not just possibly) produce a substantially better net result. Indeed, there is no indication that Plaintiffs considered the credentials of or contacted any other attorney about this matter.

Plaintiffs go on to state that their attorneys are entitled to the rates they seek due to their experience and abilities, without reference to any geographic, experiential, or outcome-related measure, or any case law whatsoever. (Docket No. 68-2 at 5.)

I find Plaintiffs' vague assertions fail to establish an exception to the forum rule

8

under Simmons, and a reasonable hourly rate for attorneys Fuller and Bacon is the rate charged by attorneys of comparable experience in this district.[4]

Hourly rates in this District, for similar cases brought by attorneys of comparable experience, do not come close to the rates sought by Plaintiffs' counsel here. *See, e.g.*, Anderson v. Rochester-Genesee Reg'l Transp. Auth., 388 F. Supp. 2d 159, 171 (W.D.N.Y. 2005) (hourly rates from $175 to $250 awarded under 42 U.S.C. §§ 1988 and 12205); Beckford v. Irvin, 60 F. Supp. 2d 85 (W.D.N.Y. 1999); Greenway v. Buffalo Hilton Hotel, 951 F. Supp. 1039 (W.D.N.Y. 1997) (in sharply contested ADA case that went to trial, rates of $200 per hour for seasoned litigation partner and $125 per hour for senior associate found to reflect prevailing rates in community); *see also*, Preservation Coalition v. Federal Transit Admin., 99-CV-745S, 2006 U.S. Dist. LEXIS 11960 (W.D.N.Y. Feb. 26, 2006) (experienced counsel for prevailing party in action under National Historic Preservation Act awarded $225 and $160 per hour for appellate work).

Although a few years has passed since the most recent of these decisions, the economic climate, nationally and in this District, has not been conducive to the upward movement of hourly rates. Indeed, this Court is unaware of any decision issued more

---

[4] I do note that Simmons was decided approximately one and one-half months after Plaintiffs filed the instant fee application. But Simmons was decided prior to Plaintiffs' filing of their related motion to deem their fee request admitted, and I further note counsel's ongoing obligation to bring authority relevant to their action to the attention of the court. Plaintiffs certainly could have sought to supplement their application in light of Simmons, but did not do so.
Plaintiffs also failed to acknowledge Arbor Hill, decided well before the filing of their fee application, which held that the presumption (of retaining counsel at local rates) could be rebutted only in the *unusual case* where litigants could demonstrate their selection was reasonable under the circumstances. 493 F.3d at 119. Even had the Court ruled on this motion under the arguably broader standard of Arbor Hill, Plaintiffs would not have succeeded in rebutting the presumption, given the vague rationale for their selection, the rates charged by their counsel, and the absence of any indication that Plaintiffs contacted or considered any other attorney regarding this matter.

9

recently in any substantive area in which fees of more than $240 per hour were awarded. *See* Samuel v. Town of Cheektowaga, 09-CV-381, 2010 U.S. Dist. LEXIS 5477 (W.D.N.Y. Jan. 25, 2010) ($172 per hour in civil rights case); Mostiller v. Chase Asset Recovery Corp., 09-CV-218, 2010 U.S. Dist. LEXIS 5208 (W.D.N.Y. Jan. 22, 2010) ($215 for partner and $175 for associate in FDCPA case); Barrows v. Tri-Financial, 09-CV-292, 2009 U.S. Dist. LEXIS 101089 (W.D.N.Y. Oct. 30, 2009) ($200 and $125 per hour appropriate for counsel based on their respective substantive experience in FDCPA case); Malta v. Slagle, 05-CV-342, 2008 U.S. Dist. LEXIS 67600 (W.D.N.Y. Sept. 2, 2008) (rates of $240 and $180 in First Amendment case that proceeded to trial); Pasternak v. Baines, 00-CV-369, 2008 U.S. Dist. LEXIS 37845 (W.D.N.Y. May 8, 2008) (reducing rates to $240 and $135 per hour in reverse discrimination case that proceeded to trial).[5]

I find the subject matter of this case is not particularly novel or complex. Counsels' work involved drafting a complaint; three discovery motions, one of which was withdrawn due to Plaintiffs' own error, and one of which was uncontested; and a motion for summary judgment, which was granted as unopposed. I have considered all other factors set forth above and find that none warrants an upward adjustment to the rates prevailing in this District, as reflected in recent decisions. *See* Fink v. City of New York, 154 F. Supp. 2d 403, 414-15 (E.D.N.Y. 2001) (declining to enhance fee in ADA case). Accordingly, a

---

[5] At this juncture I must note that, earlier in this case, Magistrate Judge Hugh B. Scott awarded $350 per hour for fewer than five hours' work performed by Attorney Bacon on a discovery motion. 2008 U.S. Dist. LEXIS 33780 (W.D.N.Y. Apr. 24, 2008). Judge Scott noted the requested rate was not reasonable for this District where rates of "around $200 per hour" have been upheld for attorneys with equivalent experience in other discovery sanction applications. *Id.* at *9-10. But he did note the fee application was uncontested, and went on to state that accepting Bacon's higher rate for the limited number of hours at issue "will not be setting a precedent as to what is now reasonable in the Western District of New York." *Id.* at *12. I decline to apply a similar rationale to an application for fees totaling almost $40,000.00, particularly in light of the far lower rates applicable in this District for other cases involving fee-shifting statutes.

10

reasonable hourly rate for Attorney Fuller is $240 per hour, and a reasonable rate for Attorney Bacon, who, though an experienced litigator, appears to have far less experience in ADA-related matters, is $200 per hour.

Plaintiffs also have included billing for paralegal time at a rate of $115 per hour. This rate also is excessive for this District, and is reduced to $75 per hour. Estay v. Moren & Woods LLC, 09-CV-620, 2009 U.S. Dist. LEXIS 119033 (W.D.N.Y. Dec. 22, 2009) (approving paralegal rate of $50); Cooper v. Niagara Cmty. Action Program, 08-CV-468, 2009 U.S. Dist. LEXIS 28991 (W.D.N.Y. Apr. 3, 2009) (approving paralegal rate of $75).

### 4. The Hours Reasonably Expended

"Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." Kirsch v. Feet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (*citing* Hensley, 461 U.S. at 437 n.12). The purpose of this requirement is to provide sufficient information so the court can audit the hours and determine whether they were reasonably expended. Anderson, 388 F. Supp. 2d at 165 (citations and quotation omitted).

In assessing whether attorney time was "reasonably expended," the Court also must ask whether the attorney exercised "billing judgment." As the Supreme Court has explained:

> counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, billing judgment is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly

11

billed to one's adversary pursuant to statutory authority.

Hensley, 461 U.S. at 434 (citation and quotation marks omitted).

Plaintiffs seek payment of 30.6 hours of time for Attorney Fuller, 56.65 hours of time for Attorney Bacon, and 8.5 hours for a paralegal. However, there are problems with the sufficiency of billing records and duplication, among other things.

While the billing records are generally adequate, there are a number of vague entries that offer no clue as to how time was expended. For example, there are numerous entries for phone calls or letters that do not provide any information about the purpose or content of same, or simply refer to "status" of suit. These deficiencies relate to Attorney Fuller's time records and appear to involve approximately 15 percent of his billed time. Accordingly, I find it appropriate to reduce the total number of hours requested by Fuller by 15 percent, or 4.6 hours. *See* Sabatini v. Corning-Painted Post Area Sch. Dist., 190 F. Supp. 2d 509, 522 (W.D.N.Y. 2001) (applying percentage reduction for non-specific entries such as "hearing preparation," "prepare for hearing," "review records," "telephone conference with client," "prepare for discovery," etc.); In re Olson, 280 U.S. App. D.C. 205, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (disallowing entries that failed to identify the subject of a meeting, conference, or phone call); Grendel's Den v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984) ("in cases involving fee applications . . . the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award, or in egregious cases, disallowance").

Attorney Bacon's entries, though far more detailed, are not without problems. For example, Bacon seeks to recover 3.8 hours of time previously awarded on his successful

motion to compel. (Docket No. 43.[6]) This double-billing obviously must be disallowed. Bacon also seeks to recover for drafting a motion to compel, which was later withdrawn, and for responding to the Court's *sua sponte* request that he show why sanctions should not be imposed for filing that motion. Having reviewed the relevant documents, I find this is not a cost that should be borne by Defendant. Accordingly, another 4.0 hours is disallowed for those entries. Finally, Bacon reduced the rate for most, but not all, of his travel time by 50 percent. That same 50 percent reduction should be applied to the remainder of his travel time, for a further reduction of 2.6 hours.

Certain of the paralegal's billing entries suffer from the same deficiencies as Attorney Fuller's. The amount of unspecified charges is somewhat less and, therefore, a 10 percent reduction, of 0.85 hours, is applied to the paralegal time.

In sum, the Court finds an appropriate fee award for this case is:

| | | |
|---|---|---|
| Fuller | 26 hours x $240 | $6,240 |
| Bacon | 46.25 hours x $200 | $9,250 |
| Paralegal | 7.20 hours X $75 | $ 540 |
| **Total** | | **$16,030.00** |

5. **Costs**

In addition to their attorneys' fees, Plaintiffs seek to recover $10,916.82 purportedly incurred for: court fees, service of process, photocopies, postage and mailing, telephone charges, an open/close file charge, title search, re-inspection fee, expert fees, and travel-related expenses including airfare, lodging, car rental, meals and gratuities. (Docket No.

---

[6] Here, the time to draft the motion was reduced by .9 hours, but otherwise, all dates, times, and descriptions are the same as presented in Bacon's earlier affidavit. (Docket No. 41.)

68-3 at 10-13).

### a. *Expert Fees*

The expert fees is the only item for which documentation is provided. (Docket No. 68-8). Plaintiffs have submitted two invoices from A.D.A. Compliance Team Inc., the first, dated October 14, 2006, for $3,100.00; and the second, dated December 3, 2007, for $3,400.00. Plaintiffs also have attached two documents authored by A.D.A. Compliance Team. The first is a four-page letter, dated October 11, 2006, listing architectural barriers purportedly encountered by Plaintiff Ingram at Defendant's property, and identifying the potential violations relating thereto. (Docket No. 68-6.) The second is a 29-page report of violations and recommended remedies, following an inspection by David Pedraza on November 19, 2007. (Docket No. 68-7.)

It is difficult for the Court to assess the reasonableness of this billing because both invoices contain only a block-billing description, followed by a lump sum number of hours. There are no dates for services provided, no documentation supporting travel expenses, nor is any time linked to specific tasks. In addition, upon review of the first and second invoices, which contain almost identical descriptions of services rendered, it appears to this Court that the first "invoice" is, in fact, a proposal for work to be performed, with a cost estimate and request for retainer, while the second appears to be the actual invoice for work completed.[7] For these reasons, the first invoice is disallowed and Plaintiffs are awarded expert fees of **$3,400.00**, the amount of the December 3, 2007 invoice. Having

---

[7] In addition to their almost identical service descriptions and the retainer request, another indication the first "invoice" is actually a proposal is the inclusion of travel time to perform an inspection and time for an on-site inspection. There is no indication in the record that any travel or inspection occurred until more than one month after the first "invoice" date, and no indication the expert made more than one trip (though both "invoices" include travel and inspection time).

reviewed the documents produced by A.D.A. Compliance Team, Inc., I find this cost to be reasonable.

### 2. *Other Costs*

As to the remaining expenses, for which no documentation is provided, the Court takes judicial notice of its $350 filing fee and $75 *pro hac vice* admission fee. The Court also will allow the $115 service of process fee, which is not inconsistent with costs in this District and at least is supported by reference to a check number for payment. But the remaining charges are either unrecoverable or otherwise suspect.

For example, the $225 charge to open/close file is part of general office overhead that is compensated through attorneys' fees. *See* LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (routine office overhead is nonrecoverable, while identifiable, out-of-pocket disbursements are generally taxed as costs).

Although many of the categories of expenses claimed by Plaintiffs are generally recoverable, courts in this Circuit have declined to consider expense requests not supported by documentation. Tatum v. City of New York, 06-CV-4290, 2010 U.S. Dist. LEXIS 7748, at *41 (S.D.N.Y. Jan. 28, 2010) (citing Kronfeld v. Transworld Airlines. Inc., 129 F.R.D. 598, 610 (S.D.N.Y. 1990) (disallowing costs because certain expenses were insufficiently documented)).

This Court would be inclined to depart from that approach if the charges were otherwise supported by the record. That is not the case here. Among other things, Plaintiffs seek recovery for a $200.00 title search expense incurred on March 13, 2007. However, there are no time entries indicating that any attorney or paralegal ordered or

reviewed such a document, and no indication that the item was paid. A $750.00 "re-inspection fee," also purportedly incurred on March 13, 2007, is presented without any frame of reference. A spot-check of dates for long-distance calls reveals that there are no corresponding time charges by attorneys or paralegals for calls on those dates. There are travel charges relating to Plaintiffs' expert which appear to also have been included in the expert's invoice. Plaintiffs' claimed expense for mediation costs is not in accord with this District's Alternative Dispute Resolution Plan. In light of the foregoing, which is not a complete list of the billing deficiencies, this Court will disallow all undocumented expenses—except those identified above.

Accordingly, Plaintiffs are entitled to Court and service of process fees in the amount of **$540.00**.

## III. CONCLUSION

For the reasons stated, this Court finds that Plaintiffs are entitled to recover attorneys' fees and costs in the amount of Nineteen Thousand, Nine Hundred, Seventy Dollars ($19, 970.00).

## ORDER

IT HEREBY IS ORDERED that Plaintiffs' Verified Application for Attorneys' Fees, Expert Fees, Litigation Expenses and Costs (Docket No. 68) is GRANTED IN PART and DENIED IN PART, and Plaintiffs are awarded $19,970.00 in fees and costs.

FURTHER that Plaintiffs' Motion to Deem Request for Fees Admitted (Docket No.

16

70) is DENIED.

SO ORDERED

Dated: February 2, 2010
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court